UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALLSTATE INSURANCE CO.,<br>　　*Plaintiff*,<br><br>　　　　*v.*<br><br>DANIELLE WILSON, PPA T.W. and<br>RENAE VAN DELL, PPA T.V.<br>　　*Defendants*. | Civil No. 3:12cv1398 (JBA)<br><br>April 30, 2014 |

**RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Allstate Insurance Company ("Allstate") moves [Doc # 44] for summary judgment on its Complaint [Doc. # 1], seeking a declaratory judgment that it owes no duty to defend or indemnify Defendants Danielle Wilson, parent and next friend of the minor T.V., and Renae Van Dell, parent and next friend of minor T.W., in a lawsuit alleging sexual assault filed against them by Intervenor Jane Doe, parent and next friend of minor Mary Doe, in Superior Court for the Judicial District of New Haven (the "*Doe* Lawsuit" or "*Doe* Complaint").[1]

**I.　　Facts**

The *Doe* Complaint alleges that during a 2009 New Year's Eve party a group of minor boys, including T.V. and T.W., sexually assaulted their longtime friend, Mary

---

[1] Intervenor Jane Doe has opposed this motion. Defendant Wilson opposed this motion at oral argument but did not file any briefing. Defendant Van Dell has filed [Doc. # 15] a pro se appearance and Answer [Doc. # 16] in this action, but has not opposed this motion.

Doe.[2]  (*Doe* Complaint, State Docket No. NNH-CV-12-5034145-S, Ex. A to Intervenor's Opp'n [Doc. # 47] ¶¶ 23–50.)  Mary Doe had consumed alcohol and was "feeling [its] intoxicating effects." (*Id.* ¶¶ 19, 27.)  During the party, T.V. pulled up Mary Doe's dress without her consent, restrained her, assisted other males in sexually assaulting her, and forcibly touched her genitals.  (*Id.* Count 18 ¶ 57.)  T.W. is alleged to have also forcibly restrained Doe, assisted other males in sexually assaulting her, forcibly touched her, and conducted oral sex.  (*Id.* Count 18 ¶ 57(e); Count 22 ¶ 57(d).)  The *Doe* Complaint also asserts claims for negligence, alleging that T.V. and T.W. both "[f]ailed to assist Plaintiff, who considered [them friends], when she became obviously intoxicated."  (*Id.* § 23 ¶ 57(e).)

The *Doe* Complaint states claims against T.V. and T.W. for false imprisonment (Counts One and Four), sexual assault (Counts Seven and Nine), negligent infliction of emotional distress (Counts Eighteen and Twenty-Two), intentional infliction of emotional distress (Counts Twenty-Four and Twenty-Eight), and civil conspiracy (Counts Thirty, Thirty-Two, and Thirty-Five).

The parents of T.V. and T.W. have both requested that Allstate defend them in the *Doe* Lawsuit pursuant to the terms of their respective homeowners' insurance policies, which are both identical in their terms.  (Ins. Pol., Exs. A1 and A2 to Pl.'s Loc. R. 56(a)1 Stmt. [Doc. # 44-1] ¶ 11.)  Allstate is currently providing legal defense to Defendants under a full reservation of its rights under the terms of each policy.  (Pl.'s Mem. Supp. [Doc. # 44-2] at 10.)  Allstate asserts, however, that it is not required to defend or

---

[2] The *Doe* Complaint refers to T.W. as John Roe III and T.V. as John Roe VI. Consistent with Fed. R. Civ. P. 5.2(a)(3), the Court uses the minors' initials instead.

indemnfiy under the terms of each policy, because (1) the facts of the *Doe* Lawsuit do not give rise to an "occurrence," (2) there was no "bodily injury" arising out of an "occurrence," and (3) the exclusions for "intentional and criminal" acts applies. (Pl.'s Mem. Supp. at 1–2.)

II.     **Discussion**[3]

"Under Connecticut law, it is well established that a liability insurer has a duty to defend its insured if the pleadings" against the insured "allege a covered occurrence." *Ryan v. Nat'l Union Fire Ins. Co.*, 692 F.3d 162, 167 (2d Cir. 2012) (quoting *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457 (2005) (alterations omitted)). "In determining whether a claim falls within the scope of an insurance policy, the Supreme Court of Connecticut 'construes broad policy language in favor of imposing a duty to defend on the insurer,' and 'requires a defense if an allegation of the complaint falls even possibly within the coverage.'" *Id.* (quoting *Hartford Cas. Ins. Co.*, 274 Conn. at 466 (2005) (alterations omitted)).

---

[3] Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

"[A]n insurer's duty to defend is measured solely by whether the complaints against the insured allege facts that, if proven true, would present a claim within the scope of the policy's coverage.  It is well settled that an insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint." *Coregis Ins. Co. v. American Health Found.*, 241 F.3d 123, 127 (2d Cir. 2001) (internal citations and quotation marks omitted) (quoting *Springdale Donuts, Inc. v. Aetna Cas. and Sur. Co.*, 247 Conn. 801, 807 (1999)).  "[T]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured." *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 448 (D. Conn. 2010).  "[W]hen an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the allegations of the underlying complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation." *VT Mut. Ins. Co. v. Ciccone*, 900 F. Supp. 2d 249, 273 (D. Conn. 2012). "In insurance cases, summary judgment may be granted as to the extent of coverage as a matter of law." *Mara*, 699 F. Supp. 2d. at 445.

### A. Occurrence

Identical language in Defendants' policies defines a covered "occurrence" as:

> an accident, including continuous or repeated exposure to substantially the same general harmful conditions . . . resulting in bodily injury or property damage.

(Ins. Pol. at 3) (formatting altered).  "Bodily injury" as used in the definition of an "occurrence" is "physical harm to the body, including sickness or disease." *Id.*  The

policies provide that, "[s]ubject to the terms, conditions, and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury . . . arising from an occurrence to which this policy applies, and is covered by this part of the policy." (*Id.* at 21) (formatting altered).

Allstate contends that the *Doe* Complaint does not allege facts that if proven true would constitute an "occurrence," and thus it does not have a duty to defend. Intervenor contends that there is a plausible claim for negligence against Defendants based on their failure to assist her and prevent the sexual assault, triggering Allstate's duty to defend.[4] (Intervenor's Opp'n [Doc. # 47-1] at 7–12.)

Defendants are entitled to coverage if any allegation in the *Doe* Complaint, construed broadly, presents a claim within the scope of the policy's coverage for an "accident" arising out of an "occurrence." *See Ryan*, 692 F.3d at 167–68. A plaintiff's characterization of the underlying claims against the insured is not dispositive. *Mara*, 699 F. Supp. 2d at 456–57 & n.32. Instead, "a duty to defend is determined by the facts in the underlying complaint, not the titles assigned to various counts." *Middlesex Mutual Assur. Co. v. Favreau,* Case No. CV02396760S (JDD), 2003 WL 22234621, at *7 (Conn. Super. Ct. Sept. 17, 2003). "Connecticut courts look past the terminology in pleading to grant summary judgment for the insurer, holding there is no duty to defend a negligence action which is actually based on intentional acts by the insured." *Mara*, 699 F. Supp. 2d at 456 (citing *Deming v. Nationwide Mutual Ins. Co.*, 279 Conn. 745, 778 (2006)).

---

[4] There is no dispute that T.V. and T.W. are "insured persons," covered by the respective policies.

"The Connecticut common law definition of 'accident' focuses on lack of intent. The Connecticut Supreme Court has defined the term 'accident' as an 'unintended,' 'unexpected,' or 'unforeseen, unplanned' event or condition." *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 447 (D. Conn. 2010) (collecting cases); *see also Commercial Contractor's Corp. v. Am. Ins. Co.*, 152 Conn. 31, 42 (1964) (defining accident with its "ordinary meaning" as an "unexpected happening"); *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 774–75 (2013) (an accident is "unexpected or unintended").

In *Mara*, an insurer claimed that it had no duty to defend in a lawsuit brought against the insured by his neighbor alleging a number of incidents of racially-motivated harassment and intimidation over the course of a year. 699 F. Supp. 2d. at 442. The insured argued that he was entitled to insurance coverage because among the allegations of the underlying civil suit were claims for negligent infliction of emotional distress. The court explained that "even when an action is pled as an unintentional tort (e.g., negligence), the court examines the alleged activities in the complaint to determine whether the insured intended to commit both the acts and the injuries that resulted." *Id.* at 450. If it appears both were intended, then coverage will be denied regardless of how the insured's conduct is characterized in the pleadings. *Id.* at 450. Reviewing the factual allegations in the underlying complaint, the court concluded that "[t]he true basis for the action is [the insured's] many intentional acts of intimidation and harassment" and thus "the label 'negligence' does not bring this action within the [insurer's] policy's coverage," because "[t]hese acts were not by any means accidental, i.e., 'occurrences' as defined in the policy." *Id.* at 459; *see also Clinch v. Generali-U.S. Branch*, 110 Conn. App. 29, 39

6

(2008) ("Reading the complaint in its entirety, as we must, the only cause of action alleged . . . is for injury arising from assault and battery that stemmed from the insured's negligence. . . . The negligent acts that he describes, however, are tied inextricably by the language of the complaint to assault and battery.  He describes no other manner in which he sustained his injuries.  Thus, we conclude that the only causes reasonably construed from the plaintiff's complaint, that is to say, that do not unreasonably contort the meaning of the language of the complaint, are for injury arising out of assault and battery." (footnoted omitted)).

Where the insured's intent is not apparent, it "may be inferred at law in circumstances where the alleged behavior in the underlying action is so inherently harmful that the resulting damage is unarguably foreseeable." *Mara*, 699 F. Supp. 2d at 450; *see also United Services Auto. Assn. v. Marburg*, 46 Conn. App. 99, 104 (1997) ("[I]ntentional 'conduct extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does.'") (quoting William L. Prosser & W. Page Keeton, *Torts* (5th ed. 1984) 35); *Favreau*, 2003 WL 22234621, at *7 (defining intentional conduct as that done with the "intent to bring about a result which will invade the interests of another in a way that the law forbids" (quoting *Marburg*, 46 Conn. App. at 105–106 (internal quotation marks omitted))).

For example, in *Allstate Ins. Co. v. Sucheki*, No. 12-cv-01566 (VLB), 2014 WL 655354, at *1 (D. Conn. Feb. 20, 2014), the court granted summary judgment to an insurer in a case with analogous facts to the case at bar in which two minors allegedly provided alcohol and marijuana to and then sexually assaulted another minor.  The

7

parents of the minors sought coverage from their insurer in a state court civil suit brought by the victim's parents, claiming that the allegations of negligent inflectional of emotional distress entitled them to coverage despite the nature of the other allegations. The court noted that "merely describing an action in terms of negligence is of no consequence when the action itself can only be deemed intentional," *id.* at *7 (citing *Mara* 699 F. Supp. 2d at 457) (internal quotation marks omitted), and held that since "the factual allegations underlying the civil complaint are ones of intentional conduct, not accidental, the Plaintiff has no duty to defend the Defendant in [the] action," *id.* The court also found that an intentional and criminal acts exclusions applied, because "Jane Doe alleged facts showing that the battery in the complaint is the intentional kind, not one showing reckless disregard of consequences or negligence." *Id.*

Here, Intervenor contends that Allstate must defend, because she has alleged in Counts Eighteen and Twenty-Two of the *Doe* Complaint that T.V. and T.W. "[f]ailed to assist Plaintiff, who considered [each of them] a friend, when she became obviously intoxicated."[5] (*Doe* Complaint ¶¶ 23–50.) The viability of a negligence claim based on these allegations seems doubtful,[6] and when considered in light of the other allegations in

---

[5] At oral argument, Intervenor conceded that none of her other counts fall within the scope of Defendants' policy coverage.

[6] To establish a claim for negligence, Mary Doe would have to show "duty; breach of that duty; causation; and actual injury." *Grenier v. Commr. of Transp.*, 306 Conn. 523, 538 (2012). "[T]here generally is no duty that obligates one party to aid or to protect another party. . . . One exception to this general rule arises when a definite relationship between the parties is of such a character that public policy justifies the imposition of a duty to aid or to protect another. . . . In delineating more precisely the parameters of this limited exception to the general rule, this court has concluded that, [in the absence of] a special relationship of custody or control, there is no duty to protect a third person." *Id.*

the *Doe* Complaint, the case for coverage is considerably less persuasive. The negligence counts allege that each Defendant "created an unreasonable risk of causing [Jane Doe] emotional distress in that *he* . . . [f]orcibly restrained [Doe's] physical liberty without her consent," "[a]ssisted multiple other males in sexually assaulting [Doe]," "[f]orcibly touched [Doe's] genitals against her will, without her consent, and despite her protestations," and "took advantage of plaintiff's intoxicated state in order to overcome any resistance or lack of consent to his sexual advances" and also that T.V. "[r]epeatedly pulled up the hem of her dress without her consent." (*Id.* Counts 18, 22 (emphasis added).)

At oral argument, Intervenor conceded that the allegation that Defendants failed to assist her is inconsistent with the claims that they were among the assailants, but maintained that because under Connecticut pleading practice she was permitted to plead in the alternative in the *Doe* Complaint, if there is insufficient evidence that Defendants committed intentional acts, the jury could alternatively find that they were negligent based their failure to prevent the assault by other defendants named in the *Doe* Complaint.

Because Intervenor's contention depends upon an interpretation of the *Doe* Complaint filed in state court, the Court looks to Connecticut pleading practice, under which "a plaintiff is permitted to advance alternative and even inconsistent theories of liability against one or more defendants in a single complaint." *Dreier v. Upjohn Co.*, 196

---

at 539–40 (alteration in original) (quoting *Murdock v. Croughwell*, 268 Conn. 559, 566 (2004)). The *Doe* Complaint does not allege that T.V. or T.W. had a relationship with or custody or control over Jane Doe.

Conn. 242, 245–46 (1985). This policy is "designed to avoid the pitfalls of unnecessary formality," *id.*, and it "allow[s] plaintiffs to pursue alternative remedies or theories of relief," *Campbell v. Town of Plymouth*, 74 Conn. App. 67, 76 (2002)," but "not to allow a plaintiff to engage in fantasy," *Dreier*, 196 Conn. at 246. Thus, "[w]hile alternative and inconsistent pleading is permitted, it would be an abuse of such permission for a plaintiff to make an assertion in a complaint that he does not reasonably believe to be the truth." *Id.*

In the *Doe* Lawsuit, Intervenor has pled in the alternative regarding legal theories only, but the facts underlying both theories are the same. As discussed above, Counts Eighteen and Twenty-Two of the *Doe* Complaint allege that Defendants created an unreasonable risk of causing Jane Doe emotional harm by their own conduct in sexually assaulting her. (*See Doe* Compl. Count 18 ¶ 57; Count 22 ¶ 57.) Further, Counts Eighteen and Twenty-Two both incorporate paragraphs one through fifty-six of the *Doe* Complaint, which allege intentional conduct. (*Id.*) Thus, it is clear from the context of the entire *Doe* Complaint as well as the allegations in Counts Eighteen and Twenty-Two that the claims for negligence are alleged to have arisen from the intentional acts of T.V. and T.W. in sexually assaulting Jane Doe. Given that the negligence claim is "tied inextricably" to the intentional tort claims, the Court concludes that the *Doe* Complaint does not allege that "an accident" has occurred, and therefore Allstate has no duty to defend or indemnify Defendants. *See Clinch,* 110 Conn. App. at 39.

### B.    Intentional and Criminal Acts Exclusions

Although the absence of "an occurrence" disposes of Allstate's duty to defend, the related intentional and criminal acts exclusions also apply in this case. The insurance

10

policies "do not cover any bodily injury intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person. This exclusion applies even if . . . such bodily injury . . . is of a different kind or degree than intended or reasonably expected." (Ins. Pol. at 23.) As discussed above, the Court concludes that the *Doe* Complaint alleges intentional conduct, indicating that there has been no covered "occurrence." This same intentional conduct also brings Defendants' claim into the intentional and criminal acts exclusions.

For example, in *Ruffino*, where it was alleged that "Mr. Ruffino beat [Mr. Nevico] severely, causing numerous injuries to various parts of Mr. Nevico's body," the court concluded that there was no "occurrence" and "[f]or similar reasons, and despite the allegations of negligence in Mr. Nevico's complaint," that Mr. Ruffino negligently increased his own proclivity for becoming violent by intoxicating himself, "the Court also conclude[d] that Mr. Ruffino acted intentionally." 2007 WL 2218972, at *3. Accordingly, the court held that an intentional acts exclusion applied. *Id.* It is clear that the allegations of sexual assault in the *Doe* Complaint also constitute criminal conduct; *see* Conn. Gen. Stat. § 53a-70 (sexual assault), Conn. Gen. Stat. § 53-95(a) (unlawful restraint); and counsel for Intervenor confirmed at oral argument that juvenile criminal charges stemmed from this incident, underscoring that the conduct alleged was both intentional and criminal. Accordingly, the intentional and criminal acts exclusions also apply.

Having concluded that there is no duty to defend, there is necessarily no duty to indemnify and thus Allstate's motion for summary judgment on its claim seeking declaratory judgment that it has no duty to defend or indemnify is granted. *See DaCruz v. State Farm Fire & Cas. Co.*, 268 Conn. 675, 688 (2004) ("Because the duty to defend is

11

significantly broader than the duty to indemnify, where there is no duty to defend, there is no duty to indemnify." (internal quotation marks omitted)).[7]

### III. Conclusion

For the reasons set forth above, Defendant's Motion [Doc. # 44] for Summary Judgment is GRANTED. The Clerk is directed to close the case.

IT IS SO ORDERED.

      /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of April, 2014.

---

[7] Given the Court's conclusion that there has been no "occurrence" and the criminal and intentional acts exclusions applies, it need not determine whether there has been a "bodily injury" under the insurance policies, which is defined as "physical harm to the body, including sickness or disease, and resulting death." (Ins. Pol. at 3.) The Court notes, however, that it has found no support for Plaintiff's contention at oral argument that for a bodily injury to exist there must be an allegation of medical treatment. Courts have found that although claims for emotional distress alone may not constitute bodily injury, claims for the physical manifestations of emotional distress, such as sleeplessness, may constitute a bodily injury within the meaning of a policy. *See, e.g.*, *Allstate Ins. Co. v. Burnard*, No. 3:08cv603 (VLB), 2010 WL 1332002, at *4–5 (D. Conn. Mar. 31, 2010). In *Peck v. Public Service Mut. Ins. Co.*, this Court held that sleeplessness was a physical condition, because "[w]ith regular loss of sleep . . . the nervous system remains active and the body's powers are not being restored. Such a condition is not mental or emotional, but rather a physical condition directly relating to the body." 363 F.Supp.2d 137, 144 (D. Conn. 2005). There appears to be no basis to conclude that the distinction between bodily injury and non-bodily injury turns on the treatment sought for a particular injury rather than the nature of the injury itself.